**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOINT STOCK COMPANY STATE SAVINGS BANK OF UKRAINE, also known as JSC OSCHADBANK,<br><br>Plaintiff,<br><br>v.<br><br>THE RUSSIAN FEDERATION,<br><br>Defendant. | Case No. 1:26-cv-03549-DEH |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S RULE 12(b)(3) MOTION TO DISMISS OR TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ....................................................................................................4

A. The Arbitral Proceeding......................................................................................4

B. The French Annulment Litigation ........................................................................4

C. The D.D.C. Action ..............................................................................................5

D. The Proceedings to Recognize the French Judgment in New York ........................7

ARGUMENT ..........................................................................................................7

I. VENUE IS PROPER IN THIS COURT......................................................................7

A. 28 U.S.C. § 1391(f) Is Inapplicable To Venue In This Removed Action. ..............8

B. 28 U.S.C. § 1441(d) Governs Venue In This Removed FSIA Action. ....................9

C. Even If § 1391(f) Applied, Venue Would Be Proper Under § 1391(f)(1). ............14

II. SECTION 1404(A) PROVIDES NO BASIS FOR TRANSFER. ....................................15

A. This Case Could Not "Have Been Brought" In D.D.C. .........................................15

B. Transfer Would Serve Neither "The Interest Of Justice" Nor Convenience. ........20

1. The Interests Of Justice And Convenience Are Not Served When Transfer Would Result In A Non-Merits Dismissal. ................................20

2. RF Has Not Made A Compelling Showing Of Convenience. ...................22

III. SECTION 1406(A) PROVIDES NO BASIS FOR TRANSFER EITHER. .......................24

CONCLUSION ......................................................................................................25

CERTIFICATE OF COMPLIANCE ............................................................................27

## TABLE OF AUTHORITIES

**Page**

### Cases

*Ackert v. Bryan*,
299 F.2d 65 (2d Cir. 1962)....................18, 19, 20, 21

*Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*,
685 F. Supp. 346 (S.D.N.Y. 1988)....................24

*Am. Homecare Fed'n, Inc. v. Paragon Sci. Corp.*,
27 F. Supp. 2d 109 (D. Conn. 1998)....................25

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
143 F.4th 496 (D.C. Cir. 2025)....................1, 3, 7, 16, 17, 19, 23

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)....................9, 13

*United States v. Assa Co.*,
934 F.3d 185 (2d Cir. 2019)....................14

*Bell v. Hood*,
327 U.S. 678 (1946)....................19

*Bloomberg Fin. L.P. v. UBS AG*,
358 F. Supp. 3d 261 (S.D.N.Y. 2018)....................22

*CC/Devas (Mauritius) Ltd. v. Antrix Corp.*,
605 U.S. 223 (2025)....................17

*CEF Energia, B.V. v. Italian Republic*,
2020 WL 4219786 (D.D.C. July 23, 2020)....................12

*CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*,
100 N.Y.2d 215 (2003)....................22

*In re Collins & Aikman Corp. Sec. Litig.*,
438 F. Supp. 2d 392 (S.D.N.Y. 2006)....................16, 23

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012)....................14

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
757 F.3d 321 (D.C. Cir. 2014)....................1

*D.H. Blair & Co. v. Gottdiener*,
462 F.3d 95 (2d Cir. 2006)....................20

*Fellus v. Sterne, Agee & Leach, Inc.*,
783 F. Supp. 2d 612 (S.D.N.Y. 2011)....................23

*Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*,
2020 WL 1503192 (S.D.N.Y. Mar. 30, 2020)....................11, 12

*Glob. Voice Grp. SA v. Republic of Guinea*,
177 F.4th 299 (D.C. Cir. 2026)....................16

*Hoffman v. Blaski*,
363 U.S. 335 (1960)....................16, 17, 18, 20

*Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l, Inc.*,
2018 WL 1940437 (S.D.N.Y. Apr. 24, 2018)....................15

*Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*,
417 F.3d 953 (8th Cir. 2005)....................3, 18

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001) (en banc)....................2, 21, 22

*John Galliano, S.A. v. Stallion, Inc.*,
15 N.Y.3d 75 (2010)....................22

*Lamar, Archer & Cofrin, LLP v. Appling*,
584 U.S. 709 (2018)....................10

*Lee v. Chesapeake & O. Ry. Co.*,
260 U.S. 653 (1923)....................10

*Liberty Mut. Ins. Co. v. Fairbanks Co.*,
17 F. Supp. 3d 385 (S.D.N.Y. 2014)....................15

*Mhany Mgmt., Inc. v. Cnty. of Nassau*,
819 F.3d 581 (2d Cir. 2016)....................10

*Mohamed v. Tesfaye*,
2019 WL 1460401 (S.D.N.Y. Jan. 24, 2019)....................21

*Polizzi v. Cowles Mags., Inc.*,
345 U.S. 663 (1953)....................2, 3, 8, 10, 11, 12, 14, 24

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998)....................9

*Ratnaswamy v. Air Afrique*,
1996 WL 507267 (N.D. Ill. Sept. 4, 1996) ....................11

*Recurrent Cap. Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*,
875 F. Supp. 2d 297 (S.D.N.Y. 2012)....................15

*Republic of Argentina v. NML Cap., Ltd.*,
573 U.S. 134 (2014)....................13

*Rio Tinto PLC v. Vale S.A.*,
2014 WL 7191250 (S.D.N.Y. Dec. 17, 2014) ....................22

*Roba v. United States*,
604 F.2d 215 (2d Cir. 1979)....................15

*Rodriguez v. Pan Am Health Org.*,
612 F. Supp. 3d 1372 (S.D. Fla. 2020) ....................12

*Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*,
202 F. Supp. 3d 399 (S.D.N.Y. 2016)....................22

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*,
989 F.2d 572 (2d Cir. 1993)....................1, 2, 18

*Smith v. Boukheir*,
2026 WL 821452 (S.D.N.Y. Mar. 25, 2026) ....................7, 14

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
450 F.3d 100 (2d Cir. 2006)....................15

*Speedfit LLC v. Woodway USA, Inc.*,
642 F. Supp. 3d 429 (S.D.N.Y. 2022)....................9

*Stabil LLC v. Russian Fed'n*,
167 F.4th 506 (D.C. Cir. 2026) ....................6

*Translinear, Inc. v. Republic of Haiti*,
538 F. Supp. 141 (D.D.C. 1982) ....................11, 13

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019)....................17

*Verlinden B.V. v. Cent. Bank of Nigeria*,
461 U.S. 480 (1983)....................2, 10

*Volkswagen De Mexico, S.A. v. Germanischer Lloyd*,
768 F. Supp. 1023 (S.D.N.Y. 1991)....................15, 24

*In re Warrick*,
70 F.3d 736 (2d Cir. 1995)....................3, 20, 21

*Williams v. Fed. Gov't of Nigeria*,
2024 WL 3759649 (S.D.N.Y. Aug. 12, 2024)....................14

*Wye Oak Tech., Inc. v. Republic of Iraq*,
24 F.4th 686 (D.C. Cir. 2022)....................17

**Statutes**

New York Civil Practice Law and Rules

Article 53—Recognition of Foreign Country Money Judgments....................7

CPLR 5304....................23

United States Code

Federal Arbitration Act, 9 U.S.C. §§ 201-08....................5

Foreign Sovereign Immunities Act of 1976, Pub. L. No. 94-583, 90 Stat. 2891

28 U.S.C. § 1330(a)....................12, 17

28 U.S.C. § 1330(b)....................12, 17

28 U.S.C. § 1391(f)....................2, 8, 9, 11, 12, 13, 14

28 U.S.C. § 1391(f)(1)....................14

28 U.S.C. § 1441(d)....................2, 3, 7, 9, 10, 11, 12, 13, 14

28 U.S.C. § 1603(a)....................9

28 U.S.C. § 1605(a)(6)....................6

28 U.S.C. § 1605(c)....................14

28 U.S.C. § 1605(d)....................14

28 U.S. Code Part IV, Chapter 87—District Courts, Venue....................8

28 U.S.C. § 1390(a)....................12

28 U.S.C. § 1390(b)....................14

28 U.S.C. § 1390(c)....................2, 8, 12, 14

28 U.S.C. § 1391....................2, 7, 8, 9, 10, 13

28 U.S.C. § 1391(a)....................2

28 U.S.C. § 1391(a)(1)....................2, 8, 10, 12, 14

28 U.S.C. § 1391(f)....................2, 8, 9, 11, 12, 13, 14

28 U.S.C. § 1391(f)(1)....................14

28 U.S.C. § 1404 .......... 8
28 U.S.C. § 1404(a) .......... 1, 3, 11, 12, 13, 15, 17, 18, 24
28 U.S.C. § 1406 .......... 8
28 U.S.C. § 1406(a) .......... 1, 3, 11, 13, 17, 23, 24, 25
28 U.S.C. § 1441 .......... 9, 10, 12
28 U.S.C. § 1441(a) .......... 9, 10
46 U.S.C. § 31322(a)(1) .......... 14

**Rules**

Fed. R. Civ. P. 12(b)(3) .......... 1, 3, 7

**Legislative History**

H.R. Rep. No. 112-10 (2011) .......... 14

**Other Authorities**

Dellapenna, Joseph, *Suing Foreign Governments and Their Corporations* (2d ed. 2003) .......... 10

*Moore's Federal Practice - Civil* (2026) § 107.141 .......... 8, 9, 10

Restatement (Third) of the Foreign Relations Law of the United States § 458 (1987) .......... 11, 13

Wright, Charles Alan & Arthur R. Miller, *Federal Practice and Procedure* (rev. 4th ed.)

§ 3732 .......... 8, 10
§ 3843 .......... 24
§ 3844 .......... 18
§ 3845 .......... 15, 16

Plaintiff Joint Stock Company State Savings Bank of Ukraine ("**Oschadbank**") respectfully submits this memorandum of law in opposition to Defendant the Russian Federation's ("**RF's**") Rule 12(b)(3) motion to dismiss for improper venue or to transfer to the District Court for the District of Columbia ("**D.D.C.**") under 28 U.S.C. § 1404(a) or § 1406(a) (Dkt. 17, "**Br.**").

## PRELIMINARY STATEMENT

This case arises from Oschadbank's efforts to enforce a 2018 arbitral award (the "**Award**") and 2025 **French Judgment** confirming the Award in France. After prevailing in arbitration, Oschadbank sued to enforce the Award in France and later in D.D.C. But due to COVID-19 and an adverse—though later reversed—setback in France, Oschadbank was unable to file its D.D.C. action within the Federal Arbitration Act's ("**FAA**") three-year limitations period, and thus relies on equitable tolling to bring its claim. Although Oschadbank's equitable tolling argument is meritorious, it is novel, and so it has undertaken parallel enforcement of the French Judgment under the Uniform Foreign Country Money Judgment Recognition Act ("**Uniform Act**"). That strategy—bringing a Uniform Act claim to enforce a foreign judgment that confirmed an arbitral award when an FAA action might be untimely—has been endorsed by the D.C. and Second Circuits and the United States Government because such actions "advance[]" the U.S. interest in enforcing foreign arbitral awards. *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 757 F.3d 321, 330-33 (D.C. Cir. 2014) (discussing Second Circuit precedent and U.S. amicus brief).

Oschadbank would ordinarily have brought its judgment-recognition claim in D.D.C., where the FAA case was pending. But the D.C. Circuit recently held that the Foreign Sovereign Immunities Act ("**FSIA**") strips courts of jurisdiction over such actions. *See Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 143 F.4th 496, 503-05 (D.C. Cir. 2025), *cert. denied*, — S. Ct. —, 2026 WL 1127199 (2026). By contrast, New York courts hold that such actions can be brought under the FSIA. *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co.,*

*Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 582-83 (2d Cir. 1993). The FSIA "clearly contemplates that [suits against foreign states] may be brought in either federal or state courts," *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983), and imposes no venue restriction on state court actions, *see* 28 U.S.C. § 1391(a)(1), (f). Oschadbank thus sued in New York state court. RF later appeared and removed to this Court under the FSIA.

Although RF calls Oschadbank's choice to sue outside D.D.C. "forum shopping," Oschadbank actually did exactly what it should have done: It filed in a court where venue lay and which had jurisdiction over the defendant and the claim. As RF's own authorities hold, selecting a court able "to obtain jurisdiction over the defendant" is a "legitimate reason[]" for forum selection. *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) (en banc). A plaintiff cannot be forced to sue "in a district where [it] cannot be sure of perfecting jurisdiction"—let alone where jurisdiction is foreclosed by binding circuit precedent. *Id.* Oschadbank did not come to New York to obtain a "tactical advantage" in the rule of decision for its judgment-recognition claim. *Id.* In fact, the law of judgment recognition is the same in both D.D.C. and New York because both jurisdictions have enacted the Uniform Act.

Stripped of its forum-shopping allegation, RF's motion to dismiss for improper venue or to transfer has no legs. RF argues that this Court is the wrong venue under the FSIA's venue statute, 28 U.S.C. § 1391(f). But under federal statutes and longstanding Supreme Court precedent, § 1391's subsections apply only to cases originally filed in federal court and do "not determine" venue in a case removed from state court, like this one. 28 U.S.C. § 1390(c); *see id.* § 1391(a); *Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953). Instead, the removal statute—including the FSIA removal subsection, 28 U.S.C. § 1441(d)—governs venue in such cases. *See,*

*e.g.*, *Polizzi*, 345 U.S. at 665-66. And this Court undisputedly was the proper venue under § 1441(d). Thus, RF's motion to dismiss or to transfer for improper venue should be denied.

RF's motion to transfer is also deficient. Transfer is available ***only*** when the case "might have been brought" in the transferee court—meaning that court would have had subject-matter and personal jurisdiction over the case and defendant at the start of the case. 28 U.S.C. §§ 1404(a), 1406(a). The party seeking transfer bears the burden of establishing this element. The D.D.C. undisputedly is not a court in which this action might have been brought because, under *Amaplat*, D.D.C. would have lacked jurisdiction under the FSIA. RF acknowledged as much by taking the position that under *Amaplat* the D.D.C. would "lack subject matter and personal jurisdiction" over a Uniform Act case like this one. Decl. of Dennis H. Hranitzky, Ex. A at 1 ("**Hranitzky Ex. A**").

Nor is it "in the interest of justice" to transfer a case solely for the purposes of manufacturing a jurisdictional defect. 28 U.S.C. §§ 1404(a), 1406(a). To the contrary, the Second Circuit has held that it is a gross abuse of discretion to transfer a case to a forum when the transfer order's "effect" would be "to foreclose consideration of the case for reasons having nothing to do with 'the convenience of the parties and witnesses.'" *In re Warrick*, 70 F.3d 736, 737 (2d Cir. 1995) (per curiam) (quoting 28 U.S.C. § 1404(a)) (granting mandamus). It is undisputed that this case would be dismissed in D.D.C. under *Amaplat*, and that outweighs any convenience to RF.

Last, RF denies that this Court has subject matter and personal jurisdiction under the FSIA, which weighs against transfer too. "[A] court without subject matter jurisdiction ***cannot*** transfer a case to another court." *Integrated Health Servs. of Cliff Manor, Inc. v. THCI Co., LLC*, 417 F.3d 953, 957 (8th Cir. 2005) (emphasis added). Having chosen to bring a motion under Rule 12(b)(3) before raising its personal and subject matter jurisdiction challenges, RF must live with the legal consequences of its choice. RF's Rule 12(b)(3) motion should be denied in its entirety.

## BACKGROUND

### A. The Arbitral Proceeding

Oschadbank is one of Ukraine's largest banks and historically maintained an extensive presence in Crimea, where it operated 294 branches. Compl. ¶ 6. In late February 2014, RF invaded and occupied the Crimean Peninsula and purported to annex it following an illegitimate referendum. *Id.* ¶ 14. RF then made it impossible for Ukrainian banks to operate there. *Id.* ¶ 15. Oschadbank's assets were transferred to Russian banks, and its cash and valuables were seized in direct raids. *Id.* ¶ 16. It never recovered its Crimean business or received any compensation. *Id.*

In January 2016, Oschadbank initiated arbitration under Article 9(2)(c) of the 1998 Russia-Ukraine bilateral investment treaty (the "**BIT**"), under which investor-state disputes are submitted to an ad hoc tribunal under the UNCITRAL Arbitration Rules. *Id.* ¶ 17. The Tribunal designated Paris as the seat of the arbitration. *Id.* ¶ 19. On November 26, 2018, the Tribunal rendered the Award, finding RF liable for breaching the BIT's prohibition on expropriation and ordering it to pay Oschadbank $1,111,300,729 in compensation, plus interest, fees, and costs. *Id.* ¶¶ 20-22.

### B. The French Annulment Litigation

In February 2019, RF applied to the Paris Court of Appeal to annul the Award. *Id.* ¶ 23. In March 2021, that court annulled the Award on a single ground, without reaching RF's remaining arguments. *Id.* ¶ 24. Oschadbank appealed, and in December 2022 the Court of Cassation reversed, reinstated the Award, and remanded. *Id.* ¶¶ 25-26.

On remand, RF again sought annulment. *Id.* ¶ 27. On July 1, 2025, the Paris Court of Appeal issued the French Judgment dismissing RF's application in its entirety, rejecting RF's contentions (1) that the Tribunal lacked jurisdiction, (2) that the Award offended international public policy, (3) that the Tribunal exceeded its mandate, and (4) that the Tribunal was irregularly constituted. *Id.* ¶¶ 28-29; Dkt. 7-1. The rejection of an annulment action "confers exequatur on

the arbitral award," rendering the Award an enforceable judgment. Compl. ¶ 30; Dkt. 7-1. The French Judgment thus became enforceable on October 27, 2025, when it was served on RF. Compl. ¶¶ 33-34. RF has appealed the French Judgment to the Court of Cassation, but under French law, its appeal does not suspend the French Judgment's enforceability. *Id.* ¶ 35.

### C. The D.D.C. Action

In 2023, Oschadbank commenced an action in the D.D.C. to confirm the Award under the New York Convention and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-08 ("**FAA**"). That proceeding seeks confirmation of the Award only; it does not bring a claim for recognition of the French Judgment, which issued more than two years after Oschadbank filed its petition. *See* Dkt. 18-11.

The D.D.C. case has over 100 docket entries but remains at the pleadings stage, and the court has yet to rule on RF's threshold FSIA motion to dismiss. Dkt. 18-10. In May 2024, RF moved to stay the case pending its second proceeding to annul the Award before the Paris Court of Appeal and, at the same time, moved to dismiss under the FSIA. Dkt. 18-1 at 2 (#12, #15). At the conclusion of the hearing on those motions, the parties agreed to a limited stay of the case until the Paris Court of Appeal had resolved RF's annulment petition. Dkt. 18-10 at 11 (#62). After the French Judgment issued and the stay lifted in July 2025, RF filed a supplemental motion to dismiss under the FSIA, and the court heard argument in December 2025. Dkt. 18-1 at 4 (#37).

At the court's request, the parties then moved to invite the United States to file an amicus brief addressing whether the French Judgment could bar, as a matter of issue preclusion, RF from arguing that it had never formed an arbitration agreement with Oschadbank, for purposes of the FSIA's arbitration exception, when the Paris Court of Appeal had rejected those same arguments. Dkt. 18-40 at 1-2. In May 2026, before the court had issued its decision on RF's two motions to

dismiss, the United States filed an amicus brief confirming that such judgments could be issue preclusive in appropriate circumstances. *See id.* at 3-16.

By this point, the D.C. Circuit had issued several precedential opinions on the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6), foreclosing all of RF's arguments. Together, those cases establish that to establish the existence of an arbitration agreement under § 1605(a)(6), the plaintiff need only establish that the foreign state ratified a BIT for the benefit of private investors—not that it formed an arbitration agreement with the plaintiff. *See, e.g.*, *Stabil LLC v. Russian Fed'n*, 167 F.4th 506, 518-26 (D.C. Cir. 2026), *cert. denied*, — S. Ct. —, 2026 WL 1855103 (2026). At RF's urging, the court permitted RF to file a revised consolidated motion to dismiss that excised all arguments that RF conceded were no longer good law; briefing on that motion concluded in June 2026, and argument took place on August 17. Dkt. 18-1 at 4-5.

RF has moved to stay the D.D.C. case four times: first, pending the Paris Court of Appeal's decision; then, twice, pending the Supreme Court's consideration of certiorari petitions in *NextEra* and *Hulley*; and, a few weeks ago, pending its Court of Cassation appeal. *E.g.*, Dkt. 18-54. RF's most recent application is tied to a separate effort by RF to have the original Tribunal revise the Award, which the Tribunal denied in December 2023. In 2026, the Paris Court of Appeal set aside that denial. The Paris Court of Appeal's 2026 ruling did not vacate the Award or the French Judgment, and the court made clear that it did not call into question the validity or merits of either. RF has simply won the right to request that a reconstituted tribunal reconsider its application. *See generally* Decl. of Isabelle Michou ¶¶ 2-35, *Joint Stock Company State Savings Bank of Ukraine v. Russian Fed'n*, No. 23-cv-764, Dkt. 123 (D.D.C. Aug. 13, 2026).

RF reports that "***12,000*** pages of briefing, declarations, expert reports, and exhibits" have been filed in the D.D.C. action, but the overwhelming majority of those pages are from RF's own

filings. Dkt. 17-1. For every motion, RF has filed multiple "international law expert" reports—of dubious relevance and admissibility—with hundreds of unrelated arbitral awards and law review articles appended. Oschadbank answered those reports in its briefs and has filed none of its own. *E.g.*, Dkt. 18-20. Beyond opposing RF's serial stay motions and motions to dismiss, and responding to the United States' amicus brief, Oschadbank has made no substantive submissions.

### D. The Proceedings to Recognize the French Judgment in New York

On April 1, 2026, Oschadbank commenced this action in the Supreme Court of the State of New York, County of New York, Index No. 154401/2026, seeking recognition of the French Judgment under the Uniform Act, CPLR Article 53. Compl. ¶ 12. On April 23, 2026, RF's counsel wrote to Oschadbank's counsel, accusing Oschadbank of "brazen forum-shopping" designed to avoid *Amaplat* and demanding, upon threat of "sanctions," that Oschadbank "withdraw" the case. Hranitzky Ex. A at 1-2. Oschadbank declined. RF removed the case to this Court on April 29, 2026 (Dkt. 1), and on August 2, 2026, it brought the instant motion.

## ARGUMENT

## I. VENUE IS PROPER IN THIS COURT.

Oschadbank bears the burden of showing that venue is proper on a Rule 12(b)(3) motion, but the Court "must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Smith v. Boukheir*, 2026 WL 821452, at *2 (S.D.N.Y. Mar. 25, 2026) (citation omitted). Contrary to RF's position, 28 U.S.C. § 1391 by its own terms is inapplicable to an action such as this that was originally brought in state court and removed to federal court. Rather, venue is proper here under 28 U.S.C. § 1441(d) under the plain text of the FSIA's venue and removal statutes and longstanding Supreme Court precedent.

### A. <u>28 U.S.C. § 1391(f) Is Inapplicable To Venue In This Removed Action.</u>

RF's venue argument is foreclosed by express statutory text. RF contends that § 1391(f) governs venue in this removed action. Br. 12. But 28 U.S.C. § 1390(c) explicitly contradicts RF's position by providing that 28 U.S.C. §§ 1390-1413—which collectively comprise chapter 87 of title 28—***do not*** govern venue in cases removed from state court.

> **Scope.**— ***This chapter*** [i.e., chapter 87] ***shall not determine the district court to which a civil action pending in a State court may be removed***, but shall govern the transfer of an action so removed as between districts and divisions of the United States district courts.

28 U.S.C. § 1390(c) (emphasis added). The first clause decides this motion: § 1391(f) does not govern venue in a removed case. The second clause of § 1390(c) then confirms that Congress made chapter 87 reach a removed action for one purpose only—to "govern the transfer of an action so removed ***as between districts***" under §§ 1404 and 1406 (emphasis added).

The text of § 1391 itself underscores the point. Paragraph 1391(a)(1) provides that, "[e]xcept as otherwise provided by law—***this section*** shall govern the venue of all civil actions ***brought*** in ***district courts of the United States***" (emphases added). A case originally filed in state court and removed to federal court "was not 'brought' in [a] District Court," but rather "was brought in a state court and removed to the District Court." *Polizzi*, 345 U.S. at 666.

Thus, by its own terms, § 1391 does not apply to cases originally filed in state court. *See, e.g.*, 14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3732 (rev. 4th ed.) ("[T]he general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to federal court …. It therefore is immaterial that the federal court to which the action is removed would not have been a proper venue if the action originally had been brought there."); 16 Moore's Federal Practice - Civil § 107.141 (2026) ("The general federal venue provisions do not apply to removed cases.") (internal citations omitted).

### B. 28 U.S.C. § 1441(d) Governs Venue In This Removed FSIA Action.

Venue is proper in this district under 28 U.S.C. § 1441(d)—§ 6 of the original FSIA—which provides that "[a]ny civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state ***to the district court of the United States for the district and division embracing the place where such action is pending***." 28 U.S.C. § 1441(d) (emphasis added).

In all cases, "the removal statute, and not the ordinary federal venue statute, governs venue in removed cases." *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998) (internal citation omitted) (discussing 28 U.S.C. §§ 1391 & 1441); *accord Speedfit LLC v. Woodway USA, Inc.*, 642 F. Supp. 3d 429, 442 (S.D.N.Y. 2022) (same); *see, e.g.*, Moore's, *supra*, § 107.141 ("[R]emoval venue is determined by the removal statute, which provides that venue is automatically proper when the case is removed to the federal district and division embracing the place where the action is filed in state court.") (footnote omitted).

The same principle governs the FSIA's removal and venue provisions, 28 U.S.C. §§ 1391(f), 1441(d). The FSIA includes its own "provisions for venue, 28 U.S.C. § 1391(f), [and] removal, § 1441(d)" that are tailored for actions against foreign states but otherwise mirror the text and structure in §§ 1391 and 1441(a). *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 n.3 (1989); *see* FSIA, Pub. L. No. 94-583, §§ 5-6, 90 Stat. 2891, 2897-98 (1976). Subsection 1391(f) specifies the federal courts only where a case "against a foreign state … may be ***brought***" (emphasis added)—i.e., originally filed by the plaintiff. And subsection 1441(d) provides that "[a]ny civil action brought in a State court against a foreign state … may be removed by the foreign state ***to the district court of the United States for the district and division embracing the place where such action is pending***" (emphasis added).

In *Polizzi*, the Supreme Court held that the U.S. Code's removal statute, rather than the general venue statute, governs venue in removed cases. *See* 345 U.S. at 665-66. Interpreting § 1441(a), which contained text identical to the emphasized text above in § 1441(d), *Polizzi* held that the statute "***expressly***" means that "the proper venue of a removed action" is the court to which the state court action is removed. *Id.* at 666 (emphasis added). *Polizzi* is the leading case on this issue, and has never been limited. *See, e.g.*, 14C Wright & Miller, *supra*, § 3732 (explaining that *Polizzi* applies equally to "Section 1441(d)" of the FSIA); Moore's, *supra*, § 107.141. Indeed, the removal statute, rather than the venue statute, has governed venue in removed cases as far back as "the original Judiciary Act of 1789." *Lee v. Chesapeake & O. Ry. Co.*, 260 U.S. 653, 657 (1923).

There is no question that § 1441(d) in the FSIA, which was enacted after *Polizzi*, likewise governs venue in removed cases. Had Congress intended to depart from *Polizzi*, it would have used different language and placed the FSIA's venue and removal provisions outside §§ 1391 & 1441. *See, e.g.*, *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 721-22 (2018) ("When Congress used the materially same language in [a statute], it presumptively was aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning."); *Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 616 (2d Cir. 2016) (Congress incorporates past precedent into statute when it "amends" the exact same statutes that courts construed "without altering the text.") (citation omitted).

Structural considerations favor this reading of the FSIA as well. The FSIA "clearly contemplates that [suits against foreign states] may be brought in … state courts." *Verlinden*, 461 U.S. at 489. But Congress did not limit the state courts in which plaintiffs can file. *See* 28 U.S.C. § 1391(a)(1) (venue statute applies only to cases "brought in district courts of the United States"); Joseph Dellapenna, *Suing Foreign Governments and Their Corporations* § 6.8, at 302 (2d ed.

2003) (the FSIA "provided no rules relating to venue in state courts"). It instead gave foreign states an absolute right to remove state court cases under § 1441(d). If § 1391(f) governed venue in a case commenced in state court as RF contends, a foreign state could remove a properly filed state court action and then win dismissal on the ground that the district § 1441(d) selects is the wrong venue. Congress guaranteed foreign states a federal forum, not an automatic right of dismissal.

Instead of departing from *Polizzi* and making § 1441(d) removal a venue death trap, Congress understood that § 1404(a) transfers for "convenience" and "the interest of justice" would adequately protect foreign states that would prefer to litigate in D.D.C. out of convenience. But as explained below, transfer is unavailable when, as here, the transferee court would lack jurisdiction over the claim. *See infra*, Part II.

District courts have accordingly held that § 1441(d) governs venue in removed FSIA cases. Judge Ramos adopted this reading in *Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, 2020 WL 1503192, at *4 (S.D.N.Y. Mar. 30, 2020). RF observes that *Foresight* ultimately transferred the case to D.D.C. under § 1404(a). Br. 15. But that's Oschadbank's point. *Foresight* ruled that venue was proper in this Court under § 1441(d), and then addressed the defendant's convenience arguments where they belong—under § 1404(a). In *Foresight*, unlike here, D.D.C. was an available forum. *See infra*, Parts II.A-B. D.D.C. has also ruled that transfer of a removed FSIA action under § 1406(a) was error because venue was proper in the court to which the state action was removed, and that § 1404(a) was the only available vehicle for transfer. *Translinear, Inc. v. Republic of Haiti*, 538 F. Supp. 141, 144 (D.D.C. 1982); *see also, e.g.*, *Ratnaswamy v. Air Afrique*, 1996 WL 507267, at *11 (N.D. Ill. Sept. 4, 1996) (recognizing that § 1441(d) governs venue in removed FSIA cases); Restatement (Third) of Foreign Relations Law § 458 reporter's

note 1 (1987) ("When an action is removed to federal court from a State court pursuant to Section 1441(d), the proper venue for continuing the action under the Foreign Sovereign Immunities Act is the federal district court to which the action was removed, even if venue could not have been laid there as an original matter[.]").

Together, these authorities confirm that a foreign state unhappy with the venue that § 1441(d) fixes must seek a discretionary transfer under § 1404(a), not attack venue.

None of RF's cases supports its contrary, atextual reading of the FSIA.

RF cites *Rodriguez v. Pan Am Health Org.*, 612 F. Supp. 3d 1372 (S.D. Fla. 2020). Br. 15. But that case was commenced in federal court and never addressed whether § 1441(d) governs venue in a removed action. *Rodriguez*'s suggestion that venue is a "feature[] of sovereign immunity" is incorrect. 612 F. Supp. 3d at 1382. Sovereign immunity bears on subject-matter and personal jurisdiction, not venue. 28 U.S.C. § 1330(a)-(b) (sovereign immunity is jurisdictional); *see id.* § 1390(a) (venue is not jurisdictional). In any case, the only question is whether § 1391(f) or § 1441(d) controls venue, not whether the FSIA governs venue in general.

RF also invokes two identical orders of Judge Stanton entered on the same day in related cases. Br. 14-15; *see* Dkts. 18-58 & 18-59. The parties in those cases do not appear to have raised §§ 1390(c) or 1391(a)(1), and the court never addressed these statutes or *Polizzi*—the dispositive legal authorities on this issue. And Judge Ramos reached the opposite conclusion four months later in *Foresight*.

RF cites the D.D.C.'s later opinion in *CEF Energia, B.V. v. Italian Republic*, and incorrectly describes the court as "holding" that "venue was improper" in New York. Br. 15 (second quoting 2020 WL 4219786, at *2 (D.D.C. July 23, 2020) (Jackson, J.)). That opinion

granted a motion to stay. *See* 2020 WL 4219786, at *5. It referred to venue only when summarizing Judge Stanton's decision in the procedural history. *Id.* at *2. That is not a "holding."

RF's remaining counterarguments fail.

RF first notes that the FSIA is "comprehensive," and asserts that "FSIA § 1391(f)'s specific venue provision" governs over § 1441, which it calls "a general removal statute." Br. 12 (first quoting *Amerada Hess*, 488 U.S. at 435 n.3). In fact, § 1441(d) is ***the FSIA removal statute***, not a "general removal statute." Reading § 1441(d) to govern here does not render "§ 1391(f) superfluous" either. Br. 12. Subsection 1391(f) fixes the federal court where an action may be brought in the first instance. And it supplies the venue standard when assessing whether an action "might have been brought" in a transferee court under 28 U.S.C. §§ 1404(a) & 1406(a). *See infra*, Part II.A. What § 1391(f) does not do is unseat the venue that § 1441(d) fixed when RF removed.

RF accuses Oschadbank of "manufacturing venue … through removal," but Oschadbank has not manufactured anything—it was RF that chose to remove. Br. 14 (capitalization altered). Subsection 1441(d) gives a foreign state the right to remove to the district embracing the state court where the action is pending—not to the federal court of its choosing.

RF finally warns—without citing any authority—that if *Polizzi* and § 1441(d) control, then "every plaintiff could circumvent § 1391(f) by first filing in state court." Br. 16. But policy cannot displace text. The Supreme Court has rejected arguments urging courts to fill "gap[s]" in the FSIA, holding that a foreign sovereign's contention "must stand on the Act's text. Or it must fall." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142, 145 (2014). RF's concern is unfounded in any event. *Polizzi* has governed venue in removed actions for seventy-three years, and RF identifies no flood of cases circumventing § 1391. Lower courts and academics have recognized for decades that § 1441(d) governs venue in removed FSIA actions too. *See, e.g.*,

*Translinear*, 538 F. Supp. at 144; Restatement (Third) of Foreign Relations Law § 458 reporter's note 1 (1987). But instead of limiting *Polizzi*, Congress reinforced it by enacting §§ 1390(c) and 1391(a)(1). *See* H.R. Rep. No. 112-10, at 17-18 & n.6 (2011) (explaining that § 1390(c) was enacted to codify *Polizzi* and related precedent).

**C. Even If § 1391(f) Applied, Venue Would Be Proper Under § 1391(f)(1).**

Because § 1441(d) governs for the reasons set forth above, venue is proper and the Court need not reach the question of whether venue would be proper under § 1391(f). But even if § 1391(f) did apply, venue would nonetheless be proper because "a substantial part of property that is the subject of the action is situated" here. This is an action to recognize a foreign country judgment under New York's Uniform Act. It is not a plenary suit to retry the merits of RF's actions in Crimea. A key purpose of this action is thus to "obtain recognition" so as "to execute against assets in [this] jurisdiction." *Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649, at *21 (S.D.N.Y. Aug. 12, 2024) (forum non conveniens does not apply to foreign judgment recognition actions for this reason), *aff'd*, 2025 WL 1065928 (2d Cir. Apr. 9, 2025) (summary order). It follows that "property that is the subject of the action is situated" in this district if there is property here to collect against.

The Complaint alleges that RF has "property in this District that may be subject to execution," Compl. ¶ 13, and RF does not dispute this allegation. Such property is therefore a substantial "subject" of this action. Absent contrary admissible evidence, those allegations must be accepted as true. *See, e.g.*, *Smith*, 2026 WL 821452, at *2.[1]

[1] The contrary decisions RF cites are neither persuasive nor binding. All incorrectly assume "that the property prong of § 1391(f)(1) governs venue in in rem actions concerning a specific and identifiable piece of property." *E.g.*, *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 2012 WL 1468486, at *2 (S.D.N.Y. Apr. 27, 2012). That ruling is at odds with the Second Circuit's later holding in *United States v. Assa Co.* that civil forfeiture actions are not subject to

## II. SECTION 1404(a) PROVIDES NO BASIS FOR TRANSFER.

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." No party has consented to try this case in D.D.C. RF must therefore establish two things: that the case could "have been brought" in D.D.C., and that transfer would serve "the interest of justice" and "the convenience of parties and witnesses." It has established neither of these things, and cannot as a matter of law establish either one.

### A. This Case Could Not "Have Been Brought" In D.D.C.

Before it may transfer, this Court must find that D.D.C. would have had both personal and subject-matter jurisdiction over this action, and that venue there would have been proper. "[A] motion to transfer venue necessarily involves an inquiry into whether the action 'might have been brought' in the proposed district, and that inquiry includes a determination whether the proposed district court would have [had] personal jurisdiction over the defendants." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 105 n.3 (2d Cir. 2006) (quoting 28 U.S.C. § 1404(a)); *see, e.g.*, *Roba v. United States*, 604 F.2d 215, 219 n.6 (2d Cir. 1979) ("[T]he Central District of California is not a district where this action might have been brought, because it lacks personal jurisdiction …."). "[C]ourts are uniform" on this point. 15 Wright & Miller, *supra*, § 3845. "The party seeking transfer bears the burden of establishing personal jurisdiction over the

---

the FSIA because such in rem cases are filed against "[p]roperty belonging to a foreign state," not the state itself. 934 F.3d 185, 189 (2d Cir. 2019). The few in rem actions the FSIA contemplates are admiralty actions—to enforce a maritime lien or foreclose a preferred mortgage on a vessel, 28 U.S.C. §§ 1605(c)-(d); 46 U.S.C. § 31322(a)(1)—and § 1391(f) does not apply in admiralty cases. *See* 28 U.S.C. § 1390(b). Also, in *Commissions Import Export*, the defendant attested that there was no property in New York, which RF has not done. *See* 2012 WL 1468486, at *3.

defendants in the transferee forum." *Volkswagen De Mexico, S.A. v. Germanischer Lloyd*, 768 F. Supp. 1023, 1029 (S.D.N.Y. 1991); *see, e.g.*, *Recurrent Cap. Bridge Fund I, LLC v. ISR Sys. & Sensors Corp.*, 875 F. Supp. 2d 297, 304 (S.D.N.Y. 2012) (same). This Court must also find that "the transferee court would have had subject matter jurisdiction over the action[.]" *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 391 n.2 (S.D.N.Y. 2014); *see, e.g.*, *Hound Partners Offshore Fund, LP v. Valeant Pharms. Int'l, Inc.*, 2018 WL 1940437, at *2 (S.D.N.Y. Apr. 24, 2018).

The Supreme Court has thus held that transfer is available only "if when a suit is commenced, plaintiff has a right to sue in that district, independently of the wishes of [a] defendant." *Hoffman v. Blaski*, 363 U.S. 335, 344 (1960) (citation omitted). "If he does not have that right," transfer is prohibited. *Id.* (citation omitted); *see, e.g.*, 15 Wright & Miller, *supra*, § 3845 (transferor court must "assess personal jurisdiction … in the transferee court as of the time the suit was brought") (citation omitted).

RF agrees that this Court must "determine[]" that the "action 'might have been brought' in the transferee court" before transferring, and seems to accept that this requires that venue lie in D.D.C. Br. 17. But RF devotes one sentence to the point, and ignores that it must also show that D.D.C. would have had personal and subject-matter jurisdiction. RF also omits that the very case it cites requires a "clear and convincing" showing that transfer is justified. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 395 (S.D.N.Y. 2006) (citation omitted).

RF has not met its burden of demonstrating that D.D.C. would have jurisdiction over this claim. Nor could it, after having affirmatively argued that Oschadbank could ***not*** have brought this claim in D.D.C. As RF recognizes, *Amaplat* holds that the FSIA's "waiver exception does not apply to recognition of foreign judgments against foreign sovereign[s] based on arbitral awards"

Br. 1; *see Amaplat*, 143 F.4th at 503. *Amaplat* also holds that the FSIA's "arbitration exception is inapplicable" to such claims. 143 F.4th at 502. The D.C. Circuit recently reaffirmed both holdings. *See Glob. Voice Grp. SA v. Republic of Guinea*, 177 F.4th 299, 305 (D.C. Cir. 2026). Oschadbank relies on both exceptions here. Compl. ¶¶ 9-10.[2] RF has thus described *Amaplat* as "binding precedent that courts lack subject matter and personal jurisdiction over foreign states based simply on ratifying the New York Convention." Hranitzky Ex. A at 1. When no exception to immunity applies, the court lacks personal and subject-matter jurisdiction. *See* 28 U.S.C. §§ 1330(a)-(b); *CC/Devas (Mauritius) Ltd. v. Antrix Corp.*, 605 U.S. 223, 234 (2025) ("[T]he FSIA collapses subject matter jurisdiction, *in personam* jurisdiction, and sovereign immunity into a single inquiry.") (citation omitted).

In sum, had Oschadbank filed this action in D.D.C., the case would have been dismissed for lack of jurisdiction. RF therefore ***cannot*** show that this case "might have been brought" in D.D.C. 28 U.S.C. §§ 1404(a) & 1406(a).

RF may argue that under *Hoffman*, 363 U.S. at 343, the question before this Court is whether the case "might have been brought" in D.D.C.—not what would happen if the case is transferred. But this argument would not help RF, because having conceded that *Amaplat* "precludes recognizing foreign judgments" like the French Judgment, it cannot meet its burden that the case might have been brought in D.D.C. Br. 21. Nor could this Court simply deny RF's motion to dismiss, transfer, and assume that D.D.C. would follow its decision as law-of-the-case. *Hoffman* aside, transferee courts apply their own circuit's interpretation of federal law, not that of

---

[2] Oschadbank also alleges that RF impliedly waived sovereign immunity through its litigation conduct here. Compl. ¶ 9. But "the conduct of a defendant after suit has been instituted" is irrelevant in assessing whether an action "might have been brought" in the transferee court. *Hoffman*, 363 U.S. at 343 (citation omitted). In any case, RF does not concede implied waiver.

the transferor court. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (transferee court must "reach [its] own conclusions on issues of federal law," including on personal jurisdiction) (cleaned up); Dkt. 27 at 1 n.1. That would remain true even if this Court or the Second Circuit were to find that jurisdiction existed under the FSIA and later transfer the case. *See, e.g.*, *Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 699 (D.C. Cir. 2022) (Jackson, J.) (reexamining FSIA jurisdiction because transferor circuit's analysis of FSIA "jurisdiction" is not law of the case in transferee court). Transfer would thus create a jurisdictional defect that does not exist today, and that jurisdictional defect could not be cured even if the Second Circuit itself were to find that jurisdiction exists under the FSIA.

Nor does it matter that the jurisdictional defect in D.D.C. arises out of a circuit split over the proper interpretation of federal law, as this possibility was expressly anticipated in *Hoffman*. "[T]ransfer always depends upon the meaning of the ***federal venue statutes***, and upon the ***jurisdiction*** of the transferee court over the person of the defendant, ***which may be a problem of constitutional dimensions***, and ***there is obviously a substantial opportunity for conflict between the Courts of Appeals over those matters***." *Hoffman*, 363 U.S. at 346 (Frankfurter, J., dissenting) (emphases added). That concern did not sway the majority. And even the dissenters—who would have read § 1404(a) to permit transfer whenever the defendant consented and convenience and justice favored it—agreed that transfer is impossible "to courts with a lack of federal power to adjudicate the matter of the dispute." *Id.* at 362-63 (dissenting opinion in companion case No. 26); *see id.* at 368 (identifying "limitations regarding the power of the federal courts to adjudicate" among the only proper limits on § 1404(a)).[3]

[3] RF also asserts in footnotes that ***this Court*** lacks jurisdiction. Br. 1 n.1, 10 n.7. RF is plainly wrong under *Seetransport*. *See* 989 F.2d at 582-83 (the FSIA's waiver exception applies

RF may cite *Ackert v. Bryan*, in which a Second Circuit panel suggested that a New York court could transfer the case to an Eighth Circuit court notwithstanding a potential split on circuit precedent. 299 F.2d 65, 68-71 (2d Cir. 1962). But *Ackert* cannot save RF's motion.

***First**, Ackert* rested on a pending Supreme Court decision that would have cured the purported bar to suit. The Court had granted certiorari on the question dividing the Second and Eighth Circuits, and the panel was "confident that the transferee court will not permit any proceedings in the case which would prejudice petitioner" before that ruling issued. 299 F.2d at 71. Even if the transferee court dismissed first, "a reversal by the Supreme Court … would correct that situation promptly." *Id.* at 71 n.9. Transfer therefore would not have affected the outcome. By contrast, here, *Amaplat* undisputedly bars jurisdiction in D.D.C. And the Supreme Court denied certiorari in *Amaplat*. *See Amaplat Mauritius Ltd. v. Zimbabwe Mining Corp.*, — S. Ct. — , 2026 WL 1127199 (2026).

***Second***, Oschadbank's concern with D.D.C. is different in kind from the plaintiff's in *Ackert*. In *Ackert*, although the plaintiff contended that the transferee court would have lacked jurisdiction, the Second Circuit panel was skeptical—finding it "quite likely" that the adverse Eighth Circuit precedent was a merits decision about failure to state a claim, and that "the transferee court would be ***required*** to assume jurisdiction in the first instance in order to consider"

---

to an action to confirm a foreign judgment when a foreign state agrees to arbitrate in a New York Convention state party, has signed the New York Convention, and commences an action to set aside the award in the seat of the arbitration).

But in any case, if RF were right on subject matter jurisdiction (it is not), transfer would still be unavailable. RF correctly notes that a court may "address non-merits threshold grounds for ***dismissal*** before jurisdiction." Br. 10 n.7 (emphasis added) (citation omitted). Yet the cases RF invokes permit a court to decline jurisdiction by dismissing the case on non-merits grounds. Transfer, by contrast, is an affirmative order directing another court to take the case and the action to proceed there. That is an exercise of subject-matter jurisdiction. It follows that, "[i]f subject matter jurisdiction is lacking, Section 1404(a) provides no power to do anything with the case." 15 Wright & Miller, *supra*, § 3844; *see Integrated Health Servs.*, 417 F.3d at 957.

whether to dismiss the federal claim on the merits. *Id.* at 69; *id.* at 73 (per curiam) (on rehearing) (emphasis added) (citing *Bell v. Hood*, 327 U.S. 678 (1946)). To be sure, the panel in *Ackert* noted, in dicta, that transfer "would not necessarily" be barred even if the transferee court lacked jurisdiction because the issue involved "complexities" and was pending Supreme Court review. *Id.* at 69-70. But that observation was not precedential. And here, unlike *Ackert*, the transferee court's jurisdiction does not present a complex question, nor is there Supreme Court review. *Amaplat* undisputedly stands as a jurisdictional bar in D.D.C.

***Third***, *Ackert* arose in a very different posture. There, the Second Circuit denied a ***mandamus*** petition seeking to reverse a transfer order, which, to succeed, would have required a showing of a "gross abuse of discretion" or that the district court lacked the "power to make that transfer." *Id.* at 68. Regardless of whether a transfer to D.D.C. would justify mandamus relief, it would be improper in the first instance under *Hoffman*.

### B. Transfer Would Serve Neither "The Interest Of Justice" Nor Convenience.

RF also bears the burden of showing that the interest of justice and the convenience of parties and witnesses favor transfer. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006). It cannot do so. Regardless of whether this case "might have been brought" in D.D.C., transfer would end in dismissal "for reasons having nothing to do with" convenience. *In re Warrick*, 70 F.3d at 737. Even if transfer were permissible (it is not), the certainty of non-merits dismissal in D.D.C. weighs against transfer.

#### 1. The Interests Of Justice And Convenience Are Not Served When Transfer Would Result In A Non-Merits Dismissal.

The fact that the claim would be dismissed on arrival in D.D.C.—under D.C. Circuit precedent that does not apply here—establishes as a matter of law that transfer would not serve "the interest of justice" or "convenience," even independent of whether the case "might have been

brought" in D.D.C. originally. In a closely analogous case, the Second Circuit held that a "transfer order … constituted a clear abuse of discretion, and that a writ of mandamus is appropriate" to correct it. *In re Warrick*, 70 F.3d at 740. In *Warrick*, the plaintiff brought a putative ERISA class action in Connecticut against General Electric and RCA arising out of the merger of the two companies' benefit plans. *See id.* at 737. The defendants moved to transfer to the Middle District of Pennsylvania, which "had previously dismissed an action by individuals seeking essentially identical relief" arising out of the same facts, "and the Third Circuit had affirmed the Middle District's dismissal for failure of the complaint to state a claim." *Id.* at 737-38. It was "unarguable" that transfer "would serve 'judicial economy,'" but that was "not alone sufficient." *Id.* at 740 (collecting cases). The Second Circuit held that transfer was a clear abuse of discretion because the prior action had already been dismissed and that dismissal affirmed. *Id.* at 740. Thus, "transfer did not allow for consolidation, or enable the [defendants] to defend in the same forum against all actions arising from the same transaction." *Id.* "The transfer order therefore effected a short-circuit that would bring about dismissal of the claim without consideration by anyone." *Id.* Transfer was inappropriate when its "effect" was "to foreclose consideration of the case for reasons having nothing to do with 'the convenience of the parties and witnesses.'" *Id.* at 737.[4]

So too here. As in *Warrick*, it would be an abuse of discretion to transfer for the purpose of promoting judicial economy where the transfer would result in a non-merits dismissal. RF's invocation of the first-to-file doctrine is therefore beside the point. Br. 18. RF's consolidation promise is just as hollow as it was in *Warrick*. *Id.* RF has sought transfer to D.D.C. only because

[4] *Warrick* also found that the plaintiff's choice of forum and the availability of witnesses in Connecticut should have been weighed more heavily. *See id.* at 740-41. But it rested its "clear abuse of discretion" holding on the case-dispositive effect of the transfer. *Id.* at 740.

dismissal of Oschadbank's Uniform Act claim under the FSIA is a foregone conclusion in that district. *Warrick* is also a far better indicator of present Second Circuit precedent than *Ackert*.

RF calls it "brazen forum shopping" for Oschadbank to file in a New York court that has jurisdiction rather than a District of Columbia court that does not. Br. 21 (capitalization altered). Such concerns did not carry the day in *Warrick*, and Oschadbank's facts are far better because D.D.C. has a jurisdictional defect. Per RF's own authorities, "forum-shopping reasons" that weigh in favor of transfer are "attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case" on the merits. *Iragorri*, 274 F.3d at 72; *see, e.g.*, *Mohamed v. Tesfaye*, 2019 WL 1460401, at *6-7 (S.D.N.Y. Jan. 24, 2019) (party's effort to secure favorable circuit precedent on the merits was forum shopping). By contrast, a plaintiff's "ability … to obtain jurisdiction over the defendant" is a "legitimate reason[]" to choose a forum and entitled to significant deference, not one "motivated by tactical advantage." *Iragorri*, 274 F.3d at 73; *see, e.g.*, *Bloomberg Fin. L.P. v. UBS AG*, 358 F. Supp. 3d 261, 268 (S.D.N.Y. 2018) (it is proper to sue a defendant in New York when it "is amenable to suit here"); *Rio Tinto PLC v. Vale S.A.*, 2014 WL 7191250, at *12 (S.D.N.Y. Dec. 17, 2014) (plaintiff's choice was proper because "the Southern District of New York appears to be the forum where it is possible for Rio Tinto to obtain jurisdiction over all of the Defendants").

**2. <u>RF Has Not Made A Compelling Showing Of Convenience.</u>**

This Court need not dwell on RF's convenience and justice arguments. Oschadbank has no issue litigating in D.D.C. and would happily transfer the case there if RF were to expressly waive its sovereign immunity objections. Oschadbank's objection is thus not to D.D.C.; it is to a court that could not adjudicate its claim. And the relevant factors need not all be considered: "No one factor is dispositive[,] and the relative weight of each factor depends on the particular circumstances of the case." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp.

3d 399, 405 (S.D.N.Y. 2016) (citation omitted).[5] Oschadbank's choice of forum (factor 8) overwhelms all convenience considerations because it could not sue in RF's preferred forum.

But it bears emphasis that RF greatly exaggerates the inconvenience of trying the case here. Uniform Act cases are generally "ministerial" proceedings—decided on the papers, without live testimony or "microscopic analysis of the underlying proceeding." *CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 100 N.Y.2d 215, 222 (2003) (citation omitted); *John Galliano, S.A. v. Stallion, Inc.*, 15 N.Y.3d 75, 81 (2010). As a result, the "convenience of witnesses" (factor 1), "location of relevant documents" (factor 3), "locus of the operative facts" (factor 4), "availability of process to compel the attendance of unwilling witnesses" (factor 5), and "the relative means of the parties" (factor 6) do not favor D.D.C. over this Court, and the hypothetical inconvenience of RF representatives traveling to New York (factor 2) might never arise (assuming their presence was even needed). *See* Br. 20-21. And although some jurisdictional questions here may overlap with issues in D.D.C. (factor 9), many will never be adjudicated. The purportedly overlapping legal issues RF highlights, like whether the French Judgment is entitled to comity, would likely never be decided in D.D.C. for Oschadbank's Uniform Act claim; that claim will instead be dismissed under *Amaplat*. Br. 18, 21-24.[6] Last, familiarity with the governing law (factor 7) is neutral

---

[5] The relevant factors are (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice. *Royal & Sun*, 202 F. Supp. 3d at 405 (citation omitted).

[6] RF misleadingly says that it has already briefed whether the French Judgment can be recognized as a matter of comity. Br. 23. But Oschadbank does not seek to confirm the French Judgment into a money judgment in its FAA action in D.D.C. It argues only that the French Judgment bars, as a matter of issue preclusion, several of RF's arguments as to why it never formed an arbitration agreement under the FSIA. Dkt. 18-49 at 24-30. All of RF's arguments against recognizing the French Judgment as issue preclusive consist of reasons why issue preclusion's

because the FSIA is "a federal statute with which the district courts in New York and [D.C.] are equally familiar," and the Uniform Act is substantively identical in both jurisdictions. *Fellus v. Sterne, Agee & Leach, Inc.*, 783 F. Supp. 2d 612, 620 (S.D.N.Y. 2011).

RF must make a "clear and convincing" showing in favor of transfer. *In re Collins*, 438 F. Supp. 2d at 395. And whatever convenience D.D.C. might hypothetically offer, RF has not shown that litigating here is so inconvenient as to justify transfer to a District that lacks jurisdiction.

## III. SECTION 1406(a) PROVIDES NO BASIS FOR TRANSFER EITHER.

Neither side wants this case transferred under § 1406(a), even if venue is improper. RF has all but forfeited the request. Although its point heading mentions § 1406(a), RF argues against transfer under that provision and then adds a single unexplained sentence: "[a]lternatively, under § 1406(a), the Court should transfer." Br. 11, 16. Oschadbank agrees that, if this Court concludes that venue is improper, it should dismiss rather than transfer. Dismissal would produce a final, appealable judgment, allowing the Second Circuit to review the venue questions as of right rather than on an emergency mandamus petition challenging a transfer decision.

But if this Court reaches this motion on the merits, it should deny it. 28 U.S.C. § 1406(a) provides that "[t]he district court of a district ***in which is filed a case laying venue in the wrong division*** or district shall dismiss, or if it be ***in the interest of justice***, transfer such case to any district or division ***in which it could have been brought***" (emphases added). Transfer is unavailable under § 1406(a) for three reasons, each already explained above.

***First***, this is not "a district in which is filed a case laying venue in the wrong division or district." Oschadbank "filed" in New York state court, not here; it was RF that "removed" to this

---

requirements are not satisfied or should not apply to the FSIA or French judgments. Dkt. 18-50 at 21-25. RF does not raise a single ground for non-recognition that would be a defense to recognition of the French Judgment here. *Compare id. with* CPLR 5304.

Court. *See Polizzi*, 345 U.S. at 666 (case was not "brought" or "sued" in federal court if it was first commenced in state court); 15 Wright & Miller, *supra*, § 3843 n.2 ("Section 1406(a) applies only when the original federal court is not a proper venue."). Venue is also proper here, as explained in Part I. 28 U.S.C. § 1406(a).

***Second***, D.D.C. is not a district in which this case "might have been brought." That requirement governs § 1406(a) exactly as it governs § 1404(a). *See, e.g.*, *Volkswagen De Mexico*, 768 F. Supp. at 1028-29; *Alexander & Alexander, Inc. v. Donald F. Muldoon & Co.*, 685 F. Supp. 346, 349, 354 (S.D.N.Y. 1988) (declining transfer to court where defendant was not subject to personal jurisdiction, even though transfer would have been convenient and "in the interest of justice"). RF, as the movant, bears the burden of establishing jurisdiction in D.D.C. *Id.* at 350. It has not tried but has instead argued that the case could not be brought in D.D.C. *Supra*, Part II.A.

***Third***, transfer would not be "in the interest of justice," as explained above in Part II.B. *See, e.g.*, *Am. Homecare Fed'n, Inc. v. Paragon Sci. Corp.*, 27 F. Supp. 2d 109, 115 (D. Conn. 1998) (same convenience and justice factors must favor transfer under § 1406(a)).

## CONCLUSION

For the foregoing reasons, Oschadbank respectfully requests that the Court deny RF's motion to dismiss or to transfer the case to the D.D.C.

Dated: September 1, 2026

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Dennis H. Hranitzky*
Dennis H. Hranitzky
2755 E. Cottonwood Parkway, Suite 430
Salt Lake City, UT 84121
801-505-7300 Main Office Number
801-515-7400 FAX

Debra O'Gorman
Yvonne Yi Zhang
295 5th Avenue, 9th Floor
New York, NY 10016
212-849-7000 Main Office Number
212-849-7100 FAX

Alex H. Loomis (*pro hac vice*)
111 Huntington Avenue, Suite 520
Boston, MA 02199
617-712-7100 Main Office Number
617-712-7200 FAX

*Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the document complies with the word-count limitations of Local Rule 7.1(c) and page limits of Individual Practice 4(c)(ii) of Judge Dale E. Ho. The document contains 8,670 words, excluding the sections of the document excluded by Local Rule 7.1(c).