UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Joint Stock Company State Savings Bank of Ukraine *also known as* JSC Oschadbank,

Plaintiff,

v.

The Russian Federation,

Defendant.

26 Civ. 3549 (DEH)

**OPINION AND ORDER**

DALE E. HO, United States District Judge:

This is an action seeking recognition and enforcement of a foreign judgment under New York's Uniform Foreign Country Money Judgments Act, N.Y. C.P.L.R. § 5300 *et seq.*, brought by the Joint Stock Company State Savings Bank of Ukraine ("Oschadbank"), a Ukrainian bank whose 100% shareholder is the Ukrainian State. *See* Compl. ¶¶ 1, 6, ECF No. 7. Oschadbank originally brought this action against the Russian Federation ("the RF") in state court, in the New York County Supreme Court. *See id.* ¶ 12; Notice of Mot. for Summ. J. in Lieu of Compl., *Joint Stock Company State Savings Bank of Ukraine v. The Russian Federation*, Index No. 154401/2026, N.Y. Sup. Ct. (Apr. 1, 2026), ECF No. 1-2. The RF then removed the case to this Court. *See* Notice of Removal, ECF No. 1. Before the Court is the RF's Motion to Dismiss or Transfer, ECF No. 16, which seeks to dismiss this case for improper venue or alternatively transfer it to the United States District Court for the District of Columbia. *See* Mem. of L. in Supp. of Mot., ECF No. 17 ("RF Mem."). For the reasons set forth below, the RF's Motion is **DENIED**.

## BACKGROUND

This dispute ultimately arises from the RF's 2014 annexation of Crimea, when, according to Oschadbank, the RF seized over $1 billion of Oschadbank's assets and forced the bank to cease operations in Crimea. Compl. ¶¶ 2, 14-16, ECF No. 7. Oschadbank first sought relief through

arbitration under the 1998 Russia-Ukraine Bilateral Investment Treaty, and a tribunal administered by the Permanent Court of Arbitration found the RF liable for over $1 billion in damages. *Id.* ¶¶ 3, 17-22. The RF then sought to annul the arbitration award in French court, which resulted in a judgment from the Paris Court of Appeal that Oschadbank maintains had the effect of confirming the award. *Id.* ¶¶ 4, 27-35.

With the arbitration award and the French judgment in hand, Oschadbank has sought to enforce both in the United States. First, it filed suit in the U.S. District Court for the District of Columbia ("the D.D.C."), seeking to confirm the arbitration award under the Federal Arbitration Act. *See* Pet. to Confirm Foreign Arbitration Award, ECF No. 1, *Joint Stock Company State Savings Bank of Ukraine v. The Russian Federation*, No. 23 Civ. 764 (D.D.C. Mar. 21, 2023). It then brought this suit in New York State court, seeking to recognize and enforce the French judgment. *See* Compl. ¶¶ 1, 12. As Oschadbank explains, it brought these two actions separately, rather than seeking to enforce the French judgment alongside the arbitration award in the D.D.C., because D.C. Circuit precedent holds that courts lack jurisdiction under the Foreign Sovereign Immunities Act ("FSIA") to enforce foreign court judgments confirming an arbitration award. *See* Pl.'s Mem. of L. in Opp'n to Mot. 1-2 ("Oschadbank Opp'n"), ECF No. 30; *Amaplat Mauritius Ltd. v. Zimbabwe Mining Development Corp.*, 143 F.4th 496, 498-99, 505 (D.C. Cir. 2025). By contrast, the Second Circuit has concluded that the FSIA allows for jurisdiction over such enforcement actions. *See Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 582-83 (2d Cir. 1993).

The RF now moves to dismiss this case under Rule 12(b)(3) for improper venue or, alternatively, to transfer the case to the D.D.C. under 28 U.S.C. §§ 1404(a) or 1406(a).[1] The RF argues that the D.D.C is the exclusive proper venue for this case, and so the case must be transferred or dismissed under 28 U.S.C. § 1406(a). Alternatively, the RF argues that even if venue lies in this District, this Court should exercise its discretion to transfer the case to the D.D.C. under 28 U.S.C. § 1404(a), where it can be heard alongside Oschadbank's pending D.D.C. suit.

**LEGAL STANDARD**

"[O]n a motion to dismiss for improper venue under Rule 12(b)(3), the burden of proof lies with the plaintiff to show that venue is proper." *GE Renewables N. Am., LLC v. SFK USA Inc.,* No. 23 Civ. 9274, 2025 WL 437890, at *2 (S.D.N.Y. Feb. 7, 2025) (citing *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007)). In ruling on such a motion, "the Court accepts as true all factual allegations in the non-moving party's pleadings and draws all reasonable inferences in that party's favor." *Stonegardens Advisory LLC v. DeepMedia.AI*, No. 24 Civ. 2178, 2024 WL 5047628, at *8 (S.D.N.Y. Dec. 9, 2024). If venue is improper, the Court "'shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.'" *Abalu v. Soc'y of Hum. Res. Mgmt.*, No. 24 Civ. 5917, 2025 WL 1019199, at *11 (S.D.N.Y. Apr. 4, 2025) (quoting 28 U.S.C. § 1406(a)).

Where venue is proper, 28 U.S.C. § 1404(a) nonetheless provides a mechanism for transfer when it "serves 'the convenience of parties and witnesses, [and is] in the interest of justice.'" *Atlantic Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009) (quoting 28 U.S.C. § 1404(a)). The party seeking transfer under Section 1404(a) "carries

[1] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

the burden of making out a strong case for transfer," which requires "a clear and convincing showing that transfer is proper." *Stonegardens Advisory LLC*, 2024 WL 5047628, at *10.

## DISCUSSION

### I. Venue is Proper in This Court

As part of its "carefully calibrated scheme," the FSIA "addresses venue" and separately "provides for removal to federal court of a civil action brought in state court." *Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 273 (2023); *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 489 (1983) (observing that the FSIA "clearly contemplates that . . . suits may be brought in either federal or state courts," while "guarantee[ing] foreign states the right to remove any civil action from a state court to a federal court"). For cases in federal court, the FSIA articulates various bases for venue in a provision codified as part of the general federal venue statute. *See* 28 U.S.C. § 1391(f). The FSIA also separately specifies the federal courts to which cases may be removed—in other words, the proper venue for removal. Codified as part of the federal removal statute, that provision states: "Any civil action brought in a State court against a foreign state . . . may be removed by the foreign state to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(d); *see Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014) ("[I]f the action was brought in state court, the foreign sovereign may remove it to the district court of the district encompassing the state in which the action is pending."). This case was initially filed in a New York State court embraced by this district; therefore, under Section 1441(d), it may be removed to this Court.

In support of its motion, the RF argues that venue is improper here[2] and that the D.D.C. is the exclusive proper venue for this action, because the only applicable FSIA venue provision is 28 U.S.C. § 1391(f)(4), which permits suit "in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof."[3] But the RF's argument fails because it is Section 1441(d), not Section 1391(f), that governs venue for *removed* FSIA cases like this one. The Supreme Court made this clear long ago. *See Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953).

In *Polizzi*, the Supreme Court explained that "on the question of venue, [Section] 1391 has no application to this case because this is a removed action." *Id.* "The venue of removed actions," it further explained, "is governed by 28 U.S.C. [§] 1441(a)." *Id.* While *Polizzi* did not concern Section 1441(d) specifically, its reasoning applies generally to the relationship between Section 1441 and Section 1391. It articulates the general rule that "the removal statute, and not the ordinary federal venue statute . . . governs venue in removed cases." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998); *see also* 14C Wright & Miller's Fed. Prac. & Proc. §

[2] The RF also purports in footnotes to "preserve[] its right to object to subject matter and personal jurisdiction." RF Mem. 10 n.7; *see id.* at 1 n.1. Of course, subject matter jurisdiction is not waivable, and this Court has an independent responsibility to assure itself of such jurisdiction. *See, e.g., United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014); *see also* 15 Wright & Miller's Federal Practice & Procedure § 3827 (4th ed.) ("A district judge may not order transfer under Section 1406(a) unless the court has jurisdiction of the subject matter of the action."); *id.* § 3845 ("Of course, for transfer under Section 1404(a), both the transferor and the transferee must have subject matter jurisdiction over the case."). Here, the RF has not pointed to any specific defect of subject matter jurisdiction, and the Court perceives none at this stage. *See* Compl. ¶¶ 8-10, ECF No. 7 (articulating jurisdiction under the FSIA); *Seetransport*, 989 F.2d at 582-83 (applying FSIA immunity exception to action seeking to enforce foreign court judgment that confirmed arbitration award).

[3] Oschadbank argues that a separate provision allowing suit where "a substantial part of property that is the subject of the action is situated" also supports venue here. *See* Oschadbank Opp'n 14 (citing 28 U.S.C. § 1391(f)(1)). Because, as explained below, 28 U.S.C. § 1391 does not govern this case removed from state court, the Court need not address that argument.

3732 (4th ed.) ("[T]he general venue statutes, Section 1391 through Section 1393, do not apply to cases that have been initiated in a state court and removed to federal court."). When enacting the FSIA, Congress inserted FSIA-specific venue and removal provisions into this well-understood scheme. *See* 14C Wright & Miller § 3732 (4th ed.) ("The venue requirements for removed actions are dictated . . . by Section 1441(d) in civil actions brought in state court against a foreign state."); *Foresight Luxembourg Solar 1 S.A.R.L. v. Kingdom of Spain*, No. 19 Civ. 3171, 2020 WL 1503192, at *4 (S.D.N.Y. Mar. 30, 2020) (explaining that Section 1441(d) governs venue for removed cases under the FSIA). Indeed, at least one district court has specifically rejected the very argument RF makes here—that venue is improper under Section 1391(f) in a removed case under the FSIA—explaining that Section 1391(f) "applies only to actions which originally are 'brought' in federal court," whereas "Section 1441(d) governs the venue of an action removed from state court." *Translinear, Inc. v. Republic of Haiti*, 538 F. Supp. 141, 144 (D.D.C. 1982); *see also id.* at 144 n.2 ("In other words, the federal court which receives the case from state court need not satisfy the venue requirements contained in Section 1391.").

All of this follows from the plain text of the statutes. Section 1391 explicitly states that it "shall govern the venue of all civil actions *brought in district courts* of the United States." 28 U.S.C. § 1391(a)(1) (emphasis added). Section 1391(f), a subsection of Section 1391, thus only applies when an action is originally "brought" in federal court. Section 1441 then sets out its own, complementary scope, specifying multiple times that its provisions apply to any "civil action brought *in a State court*." *Id.* § 1441(a), (d) (emphasis added). If there were any doubt, Section 1390 clears it up. It contains a subsection entitled "Clarification regarding cases removed from State courts," which states, "This chapter [28 U.S.C. §§ 1390 to 1413] shall not determine the district court to which a civil action pending in a State court may be removed . . . ." *Id.* § 1390(c);

*see also* 14D Wright & Miller § 3804 (4th ed.) (explaining that Section 1390(c) codifies "principles that had long been clear under the case law and about which there is no controversy").

None of the RF's arguments against this well-established relationship between venue and removal have merit. First, the RF argues that Section 1391(f) should govern here because it is the exclusive provision establishing proper venue in FSIA cases, and this FSIA-specific provision cannot be displaced by the "general removal statute." RF Mem. 12; *see also* RF Reply 1-2. But that does not accurately describe the relationship between the statutory provisions at issue here. Section 1391(f) and Section 1441(d) are both FSIA-specific provisions, each one governing a different set of FSIA cases depending on whether a case was initially brought in state or federal court. The two are complementary parts of a comprehensive statutory scheme, and, as described above, the straightforward text of the provisions makes clear how they interact.

The RF further argues that it would be "absurd to conclude Congress intended to permit plaintiffs to circumvent" the FSIA's venue provision by filing in state court. RF Mem. 16; *see also* RF Reply 4. Putting aside the fact that it is the RF who removed this case to this Court, neither filing in state court nor removal amounts to "circumventing" the FSIA. The FSIA specifically contemplates cases being brought in either state or federal court, as well as removal from state to federal court. *See Verlinden*, 461 U.S. at 489. And in many removed cases, the venue provisions of Section 1391(f) may still play a role, informing courts' discretionary transfers under Section 1404(a). *Cf. Translinear, Inc.*, 538 F. Supp. at 144 n.2. In any case, to the extent the RF argues that it makes poor policy sense to allow removal to courts other than those specified in Section 1390(f), its quarrel is with Congress. It is not up to this Court to rewrite the FSIA. *See, e.g., M & K Employee Solutions, LLC v. Trustees of IAM Nat'l Pension Fund*, 608 U.S. 264, 266 (2026) ("[P]olicy concerns cannot trump the best interpretation of the statutory text."); *Republic of*

*Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 145 (2014) (noting it is not a court's task to fix a purported "gap in the [FSIA]").

The RF also seeks support from a pair of related district court transfer orders that it claims accepted its statutory reading. *See* RF Mem. 14-15 (citing Order, ECF No. 23, *Greentech Energy Systems A/S v. Italian Republic*, No. 19 Civ. 4398 (S.D.N.Y. Nov. 8, 2019); Order, ECF No. 13, *CEF Energia, B.V. v. Italian Republic*, No. 19 Civ. 9153, (S.D.N.Y. Nov. 18, 2019)). But those orders provide little, if any, support for the RF's position. Neither one specifies whether the court was transferring under Section 1406(a) or Section 1404(a). And in fact, the foreign state in those cases argued for transfer under Section 1404(a). *See* Mem. of L. 13, ECF No. 9, *Greentech Energy Systems A/S*. With these orders, the court appears to have simply referred to Section 1391(f) as guiding its determination of the proper forum for a discretionary transfer under Section 1404(a) in those cases, not to have treated Section 1391(f) as determining the proper court to which the cases could have been removed. In any event, even if the orders could be read as the RF suggests, they are not binding authority and—since they do not address the clear authorities and the straightforward statutory reading described above—would not be persuasive. Finally, the RF also cites another district court decision for the proposition that Section 1391(f) "provides the exclusive venues for actions against foreign states." RF Mem. 15 (quoting *Rodriguez v. Pan Am Health Org.*, 612 F. Supp. 3d 1372, 1382 (S.D. Fla. 2020)). But that action had been brought in federal court, *see Rodriguez*, 612 F. Supp. 3d at 1375, and it is clear that the court was neither considering nor addressing venue in cases removed from state court.[4]

[4] On reply, the RF suggests that Oschadbank's filing of a complaint in this case after removal, when it had initiated its state court case with a summary judgment motion, "supersed[ed]" removal so that this case was truly brought in federal court. RF Reply 2. But the RF cites no support for this argument. It is clear and undisputed that Oschadbank initiated this case in state court, and that the RF then removed the case to this Court.

In short, the RF's objections to venue under Section 1391(f) are misplaced, because venue is proper in this removed case under Section 1441(d). As the RF does not contest, Oschadbank originally brought this case in state court in a location embraced by this District and the RF then decided to remove the case to federal court. The Court will therefore not transfer or dismiss this case for improper venue under 28 U.S.C. § 1406(a).

**II. 28 U.S.C. § 1404(a) Does Not Allow Transfer to the D.D.C.**

Even when venue is permissible, transfer to another forum can still be warranted under Section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts have wide latitude to decide whether to transfer venue on a case-by-case basis. *See In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)); *Guardian Life Ins. Co. of Am. v. Hernandez*, No. 11 Civ. 2114, 2011 WL 3678134, at *2 (S.D.N.Y. Aug. 22, 2011). Courts make that decision through a two-step inquiry. First, the court determines if the action "might have been brought in the district to which transfer is sought." *Dow Jones & Co. v. Perplexity AI, Inc.*, 797 F. Supp. 3d 305, 335 (S.D.N.Y. 2025). Second, the court determines "whether the convenience of the parties and witnesses and the interests of justice favor transfer," based on numerous factors. *Id.* In this case, the Court's analysis can stop at the first step. Oschadbank could not have brought this action in the D.D.C., so Section 1404(a) does not permit transfer there.

Section 1404(a) only allows an action to be transferred to a court "where it might have been brought." Courts have consistently understood this statutory language to "refer[] to federal laws of venue, service and jurisdiction." *Farrell v. Wyatt*, 408 F.2d 662, 666 (2d Cir. 1969). Section 1404(a) thus allows transfer if "the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in

the transferee court." *Guardian Life Ins. Co. of Am. v. Coe*, 724 F. Supp. 3d 206, 213 (S.D.N.Y. 2024) (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004)); *see also, e.g.*, *Starr Indem. & Liab. Co. v. Brightstar Corp.*, 324 F. Supp. 3d 421, 431 (S.D.N.Y. 2018) (same). This is not surprising. If a court would have lacked jurisdiction, or would not have been a proper venue for an action, it is not a court where the action could "have been brought." *See* 15 Wright & Miller § 3845 (4th ed.) ("Of course, for transfer under Section 1404(a), both the transferor *and the transferee* must have subject matter jurisdiction over the case.") (emphasis added); *id.* ("[T]he transferee court must be a proper venue and must have personal jurisdiction over the defendant.").

The Supreme Court made this clear as early as 1960. In *Hoffman v. Blaski*, 363 U.S. 335 (1960), the Court held that a case could not be transferred under Section 1404(a) to a court that would have lacked personal jurisdiction over the defendant at the time the case was brought. *See* 363 U.S. at 342-44. *Hoffman* thus made clear that a potential transferee court must be one that would have had jurisdiction. *See, e.g.*, *Ivy Soc'y Sports Grp., LLC v. Baloncesto Superior Nacional*, No. 08 Civ. 8106, 2009 WL 2252116, at *3 (S.D.N.Y. July 28, 2009) (describing import of *Hoffman*).

As all parties agree, D.C. Circuit precedent means that the D.D.C. would lack subject matter jurisdiction over this case. *See Amaplat*, 143 F.4th at 499, 505; *Hartline v. Sheet Metal Workers' Nat. Pension Fund*, 286 F.3d 598, 599 (D.C. Cir. 2002) ("[T]he transferee court should decide [a] federal claim based on its own circuit's interpretation of the law."). Without jurisdiction, the D.D.C is not a place where this action could have been brought, and so transfer there under Section 1404(a) is not permitted. *Cf. Ahmed v. Rubio*, No. 25 Civ. 10705, 2026 WL 2643486, at *7 (S.D.N.Y. Sept. 8, 2026) (denying transfer under Section 1404(a) "because the District of Columbia would . . . not have jurisdiction over this case").

Again, the RF's counterarguments are lacking. The RF relies on a Supreme Court decision following *Hoffman*, where the Court stated that there was "no valid reason for reading the words 'where it might have been brought' to narrow the range of permissible federal forums beyond those permitted by federal venue statutes." *Van Dusen v. Barrack*, 376 U.S. 612, 623 (1964). The Court in *Van Dusen*, however, was rejecting the argument that possible transferee courts were limited by the *state law* that would apply upon transfer. *See id.* at 616-17, 621. It was not suggesting that there were no limits at all on potential transferee courts other than federal venue law. In fact, at the beginning of the Court's relevant discussion, it took care to emphasize that there was "no question concerning the propriety either of venue or of jurisdiction in . . . the proposed transferee forum." *Id.* at 617. Only then did the Court go on to explain that there was no reason for state law to "narrow the range of permissible federal forums." *Id.* at 623. So, far from supporting the RF's argument, *Van Dusen* in fact confirms that jurisdiction is a prerequisite for a viable transferee forum under Section 1404(a).

The RF also suggests that transfer is possible to the D.D.C. here because a "federal court always has jurisdiction to determine its own jurisdiction." RF Reply 8 (quoting *Brownback v. King*, 592 U.S. 209, 219 (2021)). But that is not how courts from *Hoffman* on have interpreted "might have been brought"—and for good reason. If Section 1404(a) permitted transfer even to a forum where an action would have been *improperly* brought, transfer would seemingly be permitted to any federal court whatsoever. The limiting phrase in the statute—"where it might have been brought"—would not serve to limit possible transfers at all, becoming entirely superfluous. *See, e.g.*, *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant."). Rather, as

authorities uniformly recognize, courts where an action "might have been brought" are those that actually would have had jurisdiction and where venue would have been proper.

The RF's strongest support comes from a Second Circuit decision, *Ackert v. Bryan*, 299 F.2d 65 (2d Cir. 1962), but ultimately that decision does not change the result here. In *Ackert*, the Circuit refused to disturb the transfer of a case to a district court in Minnesota on mandamus, although the plaintiff insisted that the transferee court would lack jurisdiction over the case under Eighth Circuit precedent (but not under Second Circuit precedent). *See* 299 F.2d at 66, 69. However, the Circuit explained its decision as resting on "the unique facts" of that case, where the Supreme Court had granted certiorari in the Eighth Circuit case and could be expected to soon resolve the relevant circuit split. *Id.* at 69. The court emphasized that mandamus "may be refused for reasons comparable to those which would lead a court of equity, in the exercise of its discretion, to withhold its protection of an undoubted legal right." *Id.* at 70. And again stressing that mandamus relief cannot be granted unless it is appropriate "in light of all the circumstances of the case," *id.* at 71, the Circuit ultimately concluded as follows: "We believe that in view of the grant of certiorari by the Supreme Court . . . a decision by this Court on the merits of the questions raised by this petition for mandamus would be inappropriate and that in light of all the circumstances of this case the writ should not issue." *Id.* at 71.

Moreover, the Second Circuit appeared to agree that transfer generally requires that the transferee court have jurisdiction, and questioned only whether a court must always establish that "*this type* of subject matter jurisdiction exists in the transferee court." *Id.* at 70 (emphasis added). It added that "there is a controlling difference between requiring the transferor court to determine . . . whether there will be, for example, diversity jurisdiction in the transferee court, and requiring it to go into the complexities of whether that court will have 'federal question' jurisdiction." *Id.* While the Circuit's distinction is not the clearest, it is illuminated by Ackert's argument, which

relied on an Eighth Circuit decision holding that the federal Investment Company Act did not create a cause of action for his claim. *See id.* at 69 (citing *Brouk v. Managed Funds, Inc.*, 286 F.2d 901 (8th Cir. 1961), *vacated as moot*, *Managed Funds, Inc. v. Brouk*, 369 U.S. 424 (1962)). The Second Circuit doubted Ackert's reading of *Brouk*, which the Circuit thought held only that a complaint had failed to "state facts sufficient to raise a claim" under the Act. *See id.* Thus, the Second Circuit appears to have rejected an attempt to dress up unfavorable precedent on the *merits* of a federal claim as precedent establishing a lack of federal question *jurisdiction*. And indeed, in a per curiam opinion on rehearing, the court emphasized that "[e]nough doubt exists whether [*Brouk*] intended to eliminate all possibility of jurisdiction under the Investment Company Act . . . so that the transferee court would be required to assume jurisdiction in the first instance . . . ." *Id.* at 73 (on rehearing). So even if the Court were to disregard the Second Circuit's instruction that *Ackert* rested on the unique circumstances of that case under the standard for mandamus relief, the decision would not assist the RF here. Unlike Ackert's argument, Oschadbank's is genuinely about jurisdiction in the proposed transferee court.

In any case, the Second Circuit has reiterated, after *Ackert*, that Section 1404(a)'s "might have been brought" language limits transfer to courts with personal jurisdiction over the defendant. *See Sole Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 105 n.3 (2d Cir. 2006); *Roba v. United States*, 604 F.2d 215, 219 n.6 (2d Cir. 1979). Under the FSIA, a lack of subject matter jurisdiction results in a lack of personal jurisdiction over a foreign sovereign. *See* 28 U.S.C. § 1330(b); *CC/Devas (Mauritius) Ltd. v. Antrix Corp. Ltd.*, 605 U.S. 223, 234 (2025) (explaining that "the FSIA collapses subject matter jurisdiction, *in personam* jurisdiction, and sovereign immunity into a single inquiry"). Thus, under *Amaplat*, the D.D.C. would lack not just subject matter jurisdiction but also personal jurisdiction over the RF for this action. So however

one reads *Ackert*, under clear Second Circuit precedent, transfer to the D.D.C. is not possible *at least* for a lack of personal jurisdiction.

Because this action is not one that "might have been brought" in the D.D.C., a court that would lack subject matter jurisdiction and personal jurisdiction over the RF, Section 1404(a) does not permit transfer there. Accordingly, the Court does not need to proceed to the second step of the Section 1404(a) analysis.

**CONCLUSION**

The Court concludes that venue is proper here and that neither 28 U.S.C. § 1406(a) nor 28 U.S.C. § 1404(a) provide a basis to transfer this case to the D.D.C. Whether Oschadbank will ultimately be able to enforce the French judgment in this action remains to be seen at this early stage. But the RF's contention that this Court is not a proper venue to even consider this case is without merit. The RF's motion is therefore **DENIED**.

Within seven days, the parties are directed to file a joint letter on proposed next steps in this litigation, including the status of service and proposed timing for the Initial Pretrial Conference that the Court previously adjourned, *see* ECF No. 13.

The Clerk of Court is respectfully requested to terminate ECF No. 16.

SO ORDERED.

Dated: November 10, 2026
New York, New York

DALE E. HO
United States District Judge